2019 IL App (1st) 191253

SIXTH DIVISION
July 26, 2019

No. 1-19-1253

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 CR 2791 |
| LARENZ SIMMONS, | ) ) | |
| Defendant-Appellant. | ) ) | Honorable Thomas J. Byrne, Judge Presiding. |

PRESIDING JUDGE DELORT delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1      The defendant, Larenz Simmons, was charged by indictment with one count of armed robbery with a firearm. The circuit court denied his motion for bail pending trial. Simmons has filed a motion for review of the bail denial, pursuant to Illinois Supreme Court Rule 604(c) (eff. July 1, 2017). Appeals of bail orders are exceedingly rare. Case law regarding them is virtually nonexistent. Noting the recent public interest and legislative attention to the issue of bail reform,[1] we issue this opinion setting forth the applicable standard of review and the reasons why we must affirm the denial order in this case.

_____

    [1]  For example, our Supreme Court Commission on Pretrial Practices recently listed "[p]retrial release and detention decisions based on risk and designed to maximize release, court

¶ 2 Appeals under Rule 604(c) are governed by special rules that recognize the need for prompt disposition of bail denial orders entered before conviction. A defendant cannot file a Rule 604(c) appeal unless he has first filed a motion in the circuit court setting forth his financial condition, family status, prior criminal background, and certain other information. Ill. S. Ct. R. 604(c)(1) (eff. July 1, 2017). The defendant in a Rule 604(c) appeal files a motion, rather than a formal brief. Ill. S. Ct. R. 604(c)(2) (eff. July 1, 2017). The motion must list certain additional facts and include a copy of the motion that he filed in the circuit court. *Id.* The State need not file any answer, but may do so if it wishes, and oral argument is not held except by request of the court. Ill. S. Ct. R. 604(c)(2), (c)(5) (eff. July 1, 2017).

¶ 3 But the most significant characteristic of Rule 604(c) is the manner in which the record of what transpired in the court below arrives in this court. In most appeals, this court receives a certified record from the clerk of the circuit court containing all of the pleadings, filed documents, exhibits, and orders. See, *e.g.*, Ill. S. Ct. R. 608(a) (eff. July 1, 2017). In some appeals, the attorneys are allowed to dispense with the clerk's record and instead provide a "supporting record" containing copies of pleadings and an affidavit that the copies are authentic. Ill. S. Ct. R. 328 (eff. July 1, 2017). In a Rule 604(c) appeal, however, neither method is used. Instead, we must rely upon the limited materials listed in the rule and provided by counsel, along with an uncertified transcript of the hearing on the defendant's motion to set his bail. The rule does not otherwise address what, if any, materials from the court below a party may provide or this court may consider.

---

appearance, and public safety" as the first "Essential Element[ ] of an Effective Pretrial System." Supreme Court Comm'n on Pretrial Practices, Preliminary Report 7 (Dec. 2018), http://www.illinoiscourts.gov/Probation/12-18.pdf [https://perma.cc/8U8T-3MVD].

¶ 4      We proceed, therefore, with an extraordinarily sparse record before us.  At the bail hearing, the State indicated that it would establish the following facts at trial.  At around midnight on September 12, 2018, the victim, Jerome Hill, entered the gate to his residence in the 1200 block of South Independence Boulevard in Chicago.  As he did, he was confronted by two people.  One individual placed a handgun to his back, and the other pointed a gun to the back of his head.  They threatened Hill, and the taller offender, later identified as defendant, took money from Hill's hand, while the shorter offender took Hill's Ventra and Link cards, as well as his phone and keys.  Both offenders then fled the scene, and Hill went into his house and called the police.

¶ 5      At about the same time, police were called to 1200 South Independence Boulevard to investigate a possible armed robbery in the parking lot of a gas station.  Officers arrived at the gas station and began canvassing the area.  Based on descriptions they had received, they detained two individuals.  They then attempted to locate the victim of the gas station robbery but were unable to do so.  The detectives assigned to the investigation created a photo array based on the proximity to the robbery of Hill.

¶ 6      On September 27, 2018,[2] officers presented a photo array to Hill, who identified defendant as one of the men who robbed him.  Hill stated that he was "75% sure" that defendant was one of the offenders.  Defendant was arrested on February 7, 2019.  Defendant allegedly admitted robbing Hill but claimed that he only pointed his gun at Hill's waist whereas his co-offender pointed a gun at Hill's head.

---

[2]  The State's response indicates that this took place on September 27, 2019, which appears to be a typographical error: the State notes that the photo array took place "[a]bout two weeks" after the incident. The parties agree that the incident occurred on September 12, 2018.

¶ 7    On May 21, 2019, defendant filed a motion to set bail.  Defendant noted that he had "strong ties to the community and was an active father and an important caretaker" for his five-year-old daughter and various cousins.  Defendant further noted that he had an IQ of 54, warranting an individualized education program in his school.  Nonetheless, he successfully graduated from Morton West Academy last year, when he was 19.  Defendant conceded that when he was 15, he pleaded guilty to aggravated unlawful use of a weapon and had one finding of juvenile delinquency.  Defendant added that he had no adult felony convictions.

¶ 8    The court held a hearing on defendant's motion on May 23, 2019.  The State noted in its argument that defendant had a "prior failure to appear on reckless conduct from September of 2018" and that he also had "a prior juvenile gun conviction[,] which was originally sentenced to probation," but that defendant subsequently violated that probation and was sentenced to 30 days in the juvenile detention center.  After hearing arguments—and only arguments—from the parties, the court denied the motion, stating in part as follows:

> "Thank you, counsel.  I have read the motion filed on behalf of Larenz Simmons in its entirety.  Read the exhibits and looked at the exhibits which includes Exhibit D, which is photos of the defendant's child.
>
> It's clear that he does have the support of his family.  He has opportunities that have been available to him even prior to this event.
>
> I am aware of his background as a juvenile.  It's a weapons offense.  That is a consideration that I do put some weight into.

The main factor the court is considering is the nature of the offense that the defendant is charged with.

The 75 percent sure identification of the defendant as one of the offenders is corroborated by his statement. I'm not at a stage where I am considering any motions but I'm not aware, unaware of the motions that are likely to be filed under these circumstances.

But to me that indicates that the State does have a case in which they can go forward. I'm concerned that a gun was pointed at somebody's head and they were given the option of surrendering their property or a demonstrated willingness to use lethal force with a gun pointed at someone's head very likely that would result in the individual's death.

Based on the proffer I heard, both offenders pointed the gun and defendant's statement which seems to be minimizing in the respect of who's putting the gun to the individual heads indicates—to the victim's head—indicate that he was only pointing at the victim's waist. Still, he's pointing a deadly weapon after a conviction of—a juvenile conviction for a gun following a probation that was terminated and sentence was imposed.

I'm not prepared to issue an I-bond even under the mitigating circumstances that have been learned that's been put together since bond was set on this case."

The court then reiterated, "No bond will stand." This appeal followed.

¶ 9    The parties do not cite, nor have we been able to find, any Illinois decision discussing the proper standard of review in a Rule 604(c) appeal. The State argues that the circuit court's denial of defendant's motion to set bail was "well within its broad discretion" and that we should not reverse its decision absent "a clear showing of an abuse of that discretion." We note that some decisions have at least indirectly reviewed bail or bond rulings for an abuse of discretion. See, *e.g.*, *People v. Saunders*, 122 Ill. App. 3d 922, 929 (1984) ("the increase in the amount of bail was within the discretion of the court"); *People v. Edwards*, 105 Ill. App. 3d 822, 830 (1982) ("The trial court's decision *** to require the Langes to post bonds pending the State's appeal *** was not an abuse of discretion."). We therefore agree with the State and hold that this court should review Rule 604(c)(1) bail appeals for abuse of discretion. An abuse of discretion occurs when the circuit court's decision is "arbitrary, fanciful or unreasonable," or where "no reasonable person would agree with the position adopted by the trial court." *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 10    Illinois Supreme Court Rule 604(c)(1) (eff. July 1, 2017) provides in pertinent part:

> "Before conviction a defendant may appeal to the Appellate Court from an order *** denying *** bail or the conditions thereof. As a prerequisite to appeal the defendant shall first present to the trial court a written motion for the relief to be sought on appeal. The motion shall be verified by the defendant and shall state the following:
>
> (i) the defendant's financial condition;

(ii) his *** residence addresses and employment history for the past 10 years;

(iii) his *** occupation and the name and address of his *** employer, if he *** is employed, or his *** school, if he *** is in school;

(iv) his *** family situation; and

(v) any prior criminal record and any other relevant facts."

¶ 11    Defendant's motion for bail did not state his financial condition nor provide specific information regarding his residence or employment history.  The motion did note that he received supplemental security income in addition to wages from various jobs he held, but it did not discuss his assets, if any.  In addition, the motion provided defendant's current address and two prior addresses but no information as to how long he had been at either address.  We acknowledge, however, that defendant—who was only 21 years old at the time of the hearing—likely had little or no assets and that his residence history (starting at age 11) very likely coincided with his mother's address.  While we note these deficiencies in defendant's original motion, we decline to hold that they are so serious as to warrant the dismissal of his appeal.  We now turn to the substance of defendant's motion for review.

¶ 12    When a court determines the amount of bail and conditions of release under section 110-5(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-5(a) (West 2018)), hearsay evidence is liberally permitted.  Under section 110-5(a) of the Code:

"Information used by the court in its findings or stated in or offered in connection with this Section may be by way of proffer based upon reliable information offered by the State or defendant.  All

> evidence shall be admissible if it is relevant and reliable regardless of whether it would be admissible under the rules of evidence applicable at criminal trials." *Id.*

¶ 13    The Code reflects a strong preference that bail be available to criminal defendants. The default position of the Code is for criminal defendants to be released on their own recognizance, with "[m]onetary bail *** set only when it is determined that no other conditions of release will reasonably assure the defendant's appearance in court, that the defendant does not present a danger to any person or the community and that the defendant will comply with all conditions of bond." *Id.* § 110-2. Even in situations where monetary bond is appropriate, the Code provides that "[a]ll persons shall be bailable before conviction," with limited exceptions. *Id.* § 110-4(a). Indeed, even a defendant accused of a crime for which life imprisonment may be imposed may receive bail if he can demonstrate "that the proof of his guilt is not evident and the presumption is not great." *Id.* § 110-4(b). And if, as in this case, the State opposes bail "upon the grounds that the person presents a real and present threat to the physical safety of any person or persons, the burden of proof of such allegations shall be upon the State." *Id.* § 110-4(c). However, "[a] defendant may be denied bail in certain instances enumerated in the Illinois Constitution and by statute." *People v. Purcell*, 201 Ill. 2d 542, 547 (2002); see also Ill. Const. 1970, art. I, § 9; 725 ILCS 5/110-4(a) (West 2018). Section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2018)) provides in relevant part that, "[i]n determining the amount of monetary bail or conditions of release, if any," the court shall take into account the following factors:

> "the nature and circumstances of the offense charged, whether the evidence shows that as part of the offense there was a use of violence or threatened use of violence, *** whether evidence

shows that during the offense *** the defendant possessed or used a firearm, *** the likelihood of conviction, the sentence applicable upon conviction, the weight of the evidence against such defendant, whether there exists motivation or ability to flee, *** family ties ***, *** character and mental condition, *** defendant's records of juvenile adjudication of delinquency in any jurisdiction, [and] any record of appearance or failure to appear by the defendant at court proceedings."

¶ 14    In this case, the facts before the circuit court were that defendant and a co-offender each drew a gun on an unarmed individual who was returning home from work. After his arrest, defendant admitted placing a loaded firearm against the victim but noted that he "only" pointed the weapon at the victim's waist, whereas the co-offender pointed the weapon at the victim's head. The court properly considered these circumstances. In addition, as the State notes, defendant's minimum sentence if convicted of armed robbery would be 21 years' imprisonment. See 720 ILCS 5/18-2(a)(2), (b) (West 2018) (15-year add-on to the Class X sentence if armed with a firearm); 730 ILCS 5/5-4.5-25(a) (West 2018) (Class X sentencing range of not less than 6 years and not more than 30 years). The minimum sentence, which would equal his age at the time of the hearing, would provide a substantial motivation to flee. Also, the defendant purportedly made an inculpatory statement to a police officer after his arrest, which (if admissible) would weigh heavily in favor of a conviction. The limited record suggests that this statement was oral, not written. Defendant challenges the admissibility of this admission, but we have virtually nothing in the record to suggest that it was obtained in such a flawed manner that it will eventually be suppressed.

¶ 15 Defendant also had a prior juvenile adjudication for weapons possession, and he subsequently violated the sentence of probation on that charge. He also failed to appear at a hearing on a reckless conduct charge. On the other hand, defendant's IQ of 54 and the fact that he has a young daughter and family support undoubtedly weigh in favor of allowing bail. However, in reviewing the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, "merely because we would have balanced the appropriate factors differently." *People v. Cox*, 82 Ill. 2d 268, 280 (1980). We cannot hold that the circuit court's decision to deny bail was "arbitrary, fanciful or unreasonable" or that "no reasonable person would agree with the position adopted by the trial court." *Becker*, 239 Ill. 2d at 234. The court did not abuse its discretion by denying defendant bail.

¶ 16 While this case was under advisement, defendant filed a motion to strike portions of the State's response, arguing that the response includes a proffer of what the State seeks to establish at trial, which differs from the proffer presented to the trial court on May 23, 2019. Defendant also challenges the State's use of a Chicago Police Department criminal history report, which was not included in defendant's motion to set bail and attached exhibits. A court of review is prohibited from considering matters outside the record on appeal. *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493, 499 (2006). Therefore, we grant defendant's motion and disregard the inappropriate material in the State's response. Nonetheless, what is properly before us demonstrates that the circuit court did not abuse its discretion.

¶ 17 Nothing in this opinion should be read to suggest that the circuit court should not consider setting an appropriate bail should defendant pursue bail at a later date and adduce more robust facts than the limited ones now before us. We also grant defendant's motion to file a reply in support of his petition.

¶ 18    Affirmed.

---

**No. 1-19-1253**

---

| | |
|---|---|
| **Cite as:** | *People v. Simmons*, 2019 IL App (1st) 191253 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CR-20791; the Hon. Thomas J. Byrne, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Stephanie A. Ciupka, Sophia Lau, and Cathryn Stewart Crawford, of Lawndale Christian Legal Center, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People. |

---