NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240121-U

NO. 4-24-0121

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 15, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| LARRY LEE WILKINS, | ) | No. 22CF2700 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Ryan A. Swift, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, finding the circuit court did not abuse its discretion in denying defendant pretrial release.

¶ 2     Defendant, Larry Lee Wilkins, appeals the circuit court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52, 223 N.E.3d 1010 (setting the Act's effective date as September 18, 2023).

¶ 3     On appeal, defendant argues this court should overturn the circuit court's decision because (1) "the State failed to meet its burden of proving by clear and convincing evidence that

the proof is evident or the presumption great that defendant committed the offense(s) charged";
(2) "the State failed to meet its burden of proving by clear and convincing evidence that defendant
poses a real and present threat to the safety of any person or persons or the community, based on
the specific articulable facts of the case"; (3) "the State failed to meet its burden of proving by
clear and convincing evidence that no condition or combination of conditions can mitigate the
real and present threat to the safety of any person or persons or the community, based on the
specific, articulable facts of the case, or the defendant's willful flight"; and (4) "the court erred in
its determination that no condition or combination of conditions would reasonably ensure the
appearance of defendant for later hearings or prevent the defendant from being charged with a
subsequent felony or Class A misdemeanor."

¶ 4                                I. BACKGROUND

¶ 5          On November 7, 2022, the State charged defendant with aggravated arson (720
ILCS 5/20-1.1 (West 2022)), a Class X felony, arson (720 ILCS 5/20-1(a)(1) (West 2022)), a
Class 2 felony, and criminal damage to government property exceeding $100,000 (720 ILCS
5/21-1.01(a)(1) (West 2022)), a Class 1 felony. The charges arose from evidence indicating
defendant was responsible for setting a fire, which caused over $200,000 of damage to the
Winnebago County Courthouse. A "no bond" arrest warrant was issued. When defendant
appeared in court the next day, counsel was appointed, probable cause was found, and defendant's
bond was modified to a $250,000 (10%) bond.

¶ 6          On December 2, 2022, defendant was indicted for the same three offenses and
defendant's $250,000 (10%) bond remained in effect. In January 2023, defendant's counsel
sought a qualified expert pursuant to section 104-11(b) of the Code (725 ILCS 5/104-11(b) (West
2022)), "to determine if a *bona fide* doubt as to fitness may be raised." The circuit court's order

indicated there had been no finding of a *bona fide* doubt by the court, but in the exercise of the court's discretion, the motion was allowed. In March 2023, after a hearing pursuant to section 104-16 of the Code (725 ILCS 5/104-16 (West 2022)), the court found defendant unfit with "a substantial probability that the defendant, if provided a course of treatment, will attain fitness within one year." Defendant was placed with the Illinois Department of Human Services (DHS) for inpatient treatment. After a hearing on December 15, 2023, defendant was found restored to fitness and returned to the custody of the Winnebago County Sheriff's Office.

¶ 7        On December 21, 2023, defendant filed a motion for reconsideration of pretrial release conditions, pursuant to section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)). On January 19, 2024, the State filed a verified petition to deny defendant pretrial release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State alleged defendant was charged with qualifying offenses, and defendant's pretrial release posed a real and present threat to the safety of persons or the community. See 725 ILCS 5/110-6.1(a)(1), (1.5) (West 2022).

¶ 8        A detention hearing and a hearing on defendant's motion for reconsideration was held on January 19, 2024, at which the State proffered the following facts and arguments. Defendant was charged with aggravated arson, a nonprobationable forcible felony. On November 5, 2022, emergency personnel were called to the Winnebago County Courthouse due to a fire there. The State said witnesses would testify Lieutenant John Hall of the Rockford Fire Department, while engaged in his official duties, hit the back of his head and suffered neck injuries. Arson investigators determined the fire originated in a stairwell leading to the courthouse basement. The arson investigator found "the ignition source of the fire was an open flame source

with direct human involvement. The material first ignited was most likely an ignitable liquid. Other potential fire scene scenarios were considered and eliminated."

¶ 9   Security camera video showed an individual wearing distinct clothing leaving the stairwell at or around the time the fire began. Several days later, an individual wearing similar clothing was discovered sleeping in the same area of the courthouse. Officers made contact with the person, later identified as defendant, and spoke with him regarding the fire's origin. Initially, defendant was uncooperative and belligerent, but he ultimately cooperated. Once shown the video, defendant admitted being in the area.

¶ 10   The State continued,

> "[T]here is probable cause to believe that the defendant committed not only arson, but aggravated arson due to the nature of the injuries to Lieutenant Hall. We would believe that the proof is evident and the presumption great the defendant has committed the offense based on that proffer and other evidence."

The evidence included the DHS report relating to defendant's fitness and the pretrial services report, which showed defendant had an outstanding warrant in Alabama for a weapons charge as indicating his risk of flight. The State concluded, "[B]ased on the serious nature of the offense, based on all the statutory requirements that need to be considered by the Court, *** it would be appropriate to detain this individual on the charges as they stand."

¶ 11   Defendant testified he had been taking his mental health medication as directed since returning to the Winnebago County jail. Defendant also said he had a brother who lived in the area and he could stay with him if released from custody. He acknowledged he would "follow and obey any conditions the judge orders." On cross-examination, defendant said his brother worked eight hours a day, but a cousin defendant simply referred to as "Blake" also stayed with

his brother and was unemployed. Defendant said his current medication "keeps my mind focused," and he wished "they would raise the milligrams."

¶ 12            Defendant's attorney proffered he had spoken with defendant's brother, who indicated his willingness to have defendant live with him "so long as he is complying with taking his medication." Counsel also proffered lab reports on the fire debris did not show evidence of an ignitable liquid, contrary to the arson investigator's belief. Counsel argued the video of the scene "was from a decent distance" and not close enough "to see if the person that the prosecution believes is [defendant] was in the stairwell lighting things or anything like that."

¶ 13            Counsel also mentioned the State's reference to "probable cause" during its argument and noted the burden to detain an individual "is more than probable cause. They have the burden of proving that the proof is evident and the presumption great that [defendant], in fact, committed this arson; meaning, knowingly set fire to the building." Counsel said,

> "The evidence that the State has is that a fire occurred and that [defendant] was in the area. But there's certainly no direct evidence that [defendant] set the fire that evening. There's certainly no direct evidence that if he did set a fire, he did so knowing that the fire was going to result in the immolation or in the fire catching to the entire building."

¶ 14            Counsel argued, "[C]ircumstantially if [defendant] lit any fire at all it seems most likely that the fire was set to keep warm, as happens around this area, and then the building caught fire accidentally." Counsel noted defendant could reside with his brother, was taking his mental health medication, and would comply with any conditions of pretrial release imposed by the circuit court. Even if the court found defendant committed the crime and posed a danger to the

public, counsel insisted reasonable conditions would secure defendant's appearance in court and the safety of the public. Specifically, counsel suggested

> "reporting to pretrial services so that [defendant's] mental health treatment can be monitored, conditions like directing him to continue in mental health treatment and taking his medication, and conditions if there is a concern about substance abuse that he be tested for substances while all of this case is ongoing."

¶ 15        In rebuttal, the State acknowledged it mentioned "probable cause" in its argument but noted it pleaded, both in its petition and at the hearing, the proof was evident and presumption great defendant committed the charged offenses. The State recited the evidence against defendant—"he was the only individual who was in the security footage going away from the stairwell at the time that the fire started," defendant's clothing matched that of the person seen leaving the scene of the fire, which the expert said was set by human means, and he was the only person in or near the stairwell at the time the fire started. The State also asserted a firefighter was injured while fighting the fire. The State noted defendant had never sought or undergone mental health treatment in the past. If released, he would be supervised by one relative who was only present part of the day and another about whom nothing was known. "So we have no indication whatsoever that the defendant would, in fact, comply with the specific regiment [*sic*] of medications that are currently being prescribed to him."

¶ 16        In determining whether defendant should be released from pretrial detention, the circuit court considered the parties' arguments, the probable cause affidavit, and the pretrial services report. The court expressly declined to consider defendant's fitness evaluation, noting only that defendant "was previously deemed unfit and then later restored to fitness. I think I can consider and will consider [defendant's] mental health history as a factor." The court found the

State proved by clear and convincing evidence defendant committed the charged offenses, including the qualifying offense of aggravated arson.

¶ 17    The circuit court then summarized the information contained in the State's probable cause statement as set forth above. The court indicated defendant admitted

> "to being in the area. And so certainly while not finding [defendant] guilty, he's entitled to the presumption of innocence, there's at least circumstantially—think I can find—will find based on that circumstantial information that the proof is still evident and the presumption great that he committed a qualifying offense."

¶ 18    Addressing the question of whether defendant "poses a real and present threat to the safety of any persons or the community," the circuit court, "having cited [section] 110-6.1 as well as [section] 110-5 and reviewing the factors incorporated in those subsections as well as the pretrial services report," found the following:

> "[Defendant] is assessed as a high risk from the pretrial services report. He is charged with a non-probationable Class X offense that did result in substantial damage to a government building, as well as injuries to a firefighter. Additionally, I'm considering that [defendant] does have a prior history out of Alabama, particularly dispositions for criminal trespass and disorderly conduct. He also has charges for violation of the State Firearms Act as well as criminal trespass, and I believe at least one warrant for the offense of carrying a concealed weapon and theft. Notwithstanding that his brother does reside in the region, he does not have strong ties to the community. He does have a history—a lengthy history of mental health concerns as well as non-appearance in court. So based on that history and the factors outlined in [section] 110-6.1, particularly the high risk, the nature of

these offenses, mental health history, the Court does find that the State has met their burden that [defendant] does pose a real and present threat to the safety of any persons or the community.”

¶ 19    The circuit court found no conditions or combination of conditions which could mitigate defendant’s dangerousness “[b]ased on the lack of ties, prior criminal history, the high risk and those [mental health] concerns.” The court granted the State’s petition to detain.

¶ 20    The circuit court entered a written order summarizing its reasoning. The court supported its finding defendant committed a detainable offense as follows:

“Firefighters responded to a fire at the Winnebago County Courthouse on 11/5/2022. The fire caused extensive damage—over $200,000—and resulted in a firefighter being injured through the course of fighting the fire. Upon investigation, a person matching [defendant’s] description was seen walking away from the area. The [defendant] later admitted to being in the area to investigators. The individual in the video near the stairwell where the fire started was later confronted in the area and wearing the same clothes, later determined to be the Defendant.”

The court also summarized its finding that defendant poses a real and present threat and why less restrictive conditions would not avoid the threat based on the specific articulable facts of the case:

“The court has considered the factors outlined in Section 110-6.1 and 110-5. [Defendant] is assessed as a high risk and charged with a non-probationable Class X offense resulting in substantial damage & injuries to a firefighter. Additionally, defendant has outstanding warrant(s) for criminal trespassing and disorderly conduct in Alabama. [Defendant] has prior history of violation of the State Firearms Act and criminal trespass. Has additional charges for carrying a

concealed weapon and Theft. [Defendant] does not have strong ties to the community—even though brother lives here—and has a long history of mental health concerns and non-appearance in court. No condition or combination of conditions could mitigate the risk [defendant] poses to the community."

¶ 21    After the circuit court entered its written order, defendant filed his notice of appeal under Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Dec. 7, 2023).

¶ 22    This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24    On January 22, 2024, defendant's counsel filed a notice of appeal, and the Office of the State Appellate Defender (OSAD) was appointed as counsel on appeal. OSAD has not filed a Rule 604(h) memorandum or notice in lieu of filing, thus indicating its intent to stand on the notice of appeal. Thus, we examine the arguments set forth in defendant's notice of appeal.

¶ 25    Defendant's notice of appeal was a completed form as provided in the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023)), by which defendant seeks review of an order denying pretrial release. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." Defendant checked four grounds for relief and provided additional support for each claim.

¶ 26    Defendant checked "The State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." Defendant added: "The State referenced a probable cause standard of proof throughout most of its arguments. Judge Swift initially cited his belief that the Defendant had confessed to committing arson in his decision. This was corrected on the record by both parties."

¶ 27　　　　　The next ground for relief defendant checked alleged the following: "The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." Defendant then added: "The State did not put forward any evidence that the Defendant ever intended to harm anyone by his acts. Nor did they put forward any evidence that the defense has a proclivity towards arson or violence towards others."

¶ 28　　　　　Defendant also checked:

> "The State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or the defendant's willful flight."

Defendant explained: "Other than citing that the Defendant is currently receiving medication under a structured setting and speculating that the Defendant would not be successful outside that setting, the State did not put forward evidence on this issue."

¶ 29　　　　　Lastly, defendant checked: "The court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." Defendant then added: "The Court's decision was largely based on the seriousness of the alleged defense [*sic*] and not a review and weighing of the available services in the community that would mitigate danger."

¶ 30　　　　　Before denying pretrial release, the State must prove by clear and convincing evidence (1) "the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a)"; (2) "the defendant poses a real and present threat to the safety of

any person or persons or the community, based on the specific articulable facts of the case"; and (3) "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(1), (2), (3)(i) (West 2022). Section 110-6.1 of the Code instructs the circuit court to consider "the specific articulable facts of the case" and provides nine factors the court may consider when assessing the real and present threat allegation. See 725 ILCS 5/110-6.1(g) (West 2022). If the court determines the defendant should be denied pretrial release, the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid the danger posed by the defendant to any persons or the community. 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 31          The determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. "We are not reviewing the State's evidence anew. Instead, we are reviewing the circuit court's evaluation of that evidence for an abuse of discretion." *Inman*, 2023 IL App (4th) 230864, ¶ 11. Likewise, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of the witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44, 123 N.E.3d 393.

¶ 32 Regarding defendant's first claim of error, although the statements added to the form by defendant are true, he neither claims nor argues how those statements alone prove the circuit court abused its discretion. This is defendant's burden on appeal. See, *e.g.*, *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44, 91 N.E.3d 950 (stating the appellant bears the burden of proving claims of error). Defendant did not forfeit his review, but he did not meet his burden with the simple statements provided, without argument or pointing to facts supporting his claim. We recited the entirety of defendant's argument above. As we have said in *Inman* and many times since, " 'A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented.' " *Inman*, 2023 IL App (4th) 230864, ¶ 13 (quoting *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88, 36 N.E.3d 373).

¶ 33 While the State used the words "probable cause" during its proffer, it summed up its argument by noting "the proof is evident and the presumption great the defendant has committed the offense based on that proffer and other evidence." In rebuttal, the State reiterated it both pleaded and argued the proof was evident and presumption great defendant committed the offenses for which he now stands charged. More importantly, the State's burden is established by the evidence presented, not what it might argue, and the circuit court is the final arbiter. Here, in a thorough discussion of the proffers, arguments, reports, and applicable statutes, the court found the State proved by clear and convincing evidence the proof was evident or presumption great defendant committed a qualifying offense.

¶ 34 Defendant rebuts his own inference regarding the circuit court's misstatement of his confession by noting, "This was corrected on the record by both parties." Defendant does not

claim the court improperly relied on the misstatement in its findings. Without more, defendant fails to meet his burden.

¶ 35 We have already discussed the proffers and arguments of counsel, as well as the detailed findings of the circuit court. Regarding defendant's second claim the State failed to establish his dangerousness, we cannot say the court abused its discretion in finding defendant posed a real and present threat to the safety of persons or the community. The court noted defendant was assessed as a high risk in the pretrial services report. He was charged with a nonprobationable Class X offense resulting in over $200,000 worth of damage to a government building and injuries to a firefighter. Defendant has a "lengthy history" of untreated mental health concerns and nonappearances in court. The court also pointed to defendant's criminal history out of Alabama, including criminal trespass, disorderly conduct, charges for violation of the State Firearms Act, and at least one warrant for carrying a concealed weapon and theft.

¶ 36 The circuit court expressly considered "the factors outlined in [section] 110-6.1, particularly the high risk, the nature of these offenses, [and] mental health history" before concluding the State met its burden defendant posed a real and present threat to the safety of any persons or the community. Coupled with its thorough written order, we do not find the court's conclusions to be "arbitrary, fanciful, or unreasonable." *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 37 Defendant's third claim asserts the State failed to prove there were no conditions or combination of conditions which could mitigate the real and present threat defendant posed. Defendant's supporting argument repeats the preprinted claim, *i.e.*, the State failed to meet its burden, citing only two of several factors argued by the State and found applicable by the circuit court. Such an argument is a claim the court abused its discretion when finding there were no conditions sufficient to mitigate defendant's dangerousness. Defendant has not shown how the

court abused its discretion in finding there were no condition or combination of conditions which could mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. Instead, defendant merely realleges some of the facts presented to the court, asking us to reweigh them. This we will not do. See *Vega*, 2018 IL App (1st) 160619, ¶ 44. We find no abuse of discretion where the court considered the proffers, the nature and circumstances of the offense, and defendant's mental health history and criminal record, including failures to appear and outstanding warrants, and then provided a detailed explanation for its reasons, noting the relevant statutory factors to be considered.

¶ 38 The last argument defendant raises is irrelevant to defendant's pretrial detention. The box checked on the preprinted form notice asserts, "The court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." This box is relevant to appeals from petitions to *revoke* pretrial release filed under section 110-6(a) of the Code (725 ILCS 5/110-6(a) (West 2022)). Section 110-6.1 of the Code does not require the State to prove this factor when seeking to deny a defendant pretrial release. Any argument in support of this claim is equally irrelevant.

¶ 39 After a full hearing, the circuit court entered an order meeting the requirements of section 110-6.1 of the Code. The court made detailed findings in its oral pronouncement and entered equally detailed written findings supported by specific and articulable facts. See 725 ILCS 5/110-6.1(h) (West 2022). Because the court complied with the requirements of the Code and made all the necessary findings, based on this record, we find no reason to conclude the court's decision was "arbitrary, fanciful, or unreasonable." *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 40                              III. CONCLUSION

¶ 41         For all these reasons, we affirm the circuit court's judgment.

¶ 42         Affirmed.