NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240237-U

NO. 4-24-0237

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 25, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| COLTON M. JOHNSON, | ) | No. 24CF15 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randy A. Yedinak, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding the circuit court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant, Colton M. Johnson, appeals the circuit court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52, 223 N.E.3d 1010 (setting the Act's effective date as September 18, 2023).

¶ 3    On appeal, defendant argues this court should overturn the circuit court's decision because it erred when "finding that conditions of GPS location monitoring, a curfew, and

forbidding contact with minors and the use of electronic communications would not mitigate any threat that [he] posed to the community."

¶ 4                                     I. BACKGROUND

¶ 5            On January 25, 2024, the State charged defendant with two sex offenses. Count I alleged traveling to meet a child (720 ILCS 5/11-26(a) (West 2022)), a Class 3 felony. Count II alleged indecent solicitation of a child (720 ILCS 5/11-6(c)(3) (West 2022)), a Class 3 felony. The State simultaneously filed a verified petition to deny defendant pretrial release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State alleged defendant was charged with qualifying sex offenses and defendant's pretrial release posed a real and present threat to the safety of persons or the community. 725 ILCS 5/110-6.1(a)(5) (West 2022).

¶ 6            At the probable cause and detention hearing later that same day, the circuit court confirmed defendant had a chance to confer with counsel before the hearing. Defense counsel highlighted an error in the pretrial investigation report, specifically, defendant should have scored a 5, not 7, on the Virgina Pretrial Risk Assessment Instrument-Revised (VPRAI-R) because he does not have a conviction on his record. Sharee Lemerand from the Office of Pretrial Services noted the error and said the report would be corrected. With that, the court asked for probable cause, and the State presented the following information:

> "[Defendant] initiated conversation on Facebook Messenger with a
> fictitious Facebook account operated by Detective Rafferty. This
> fictitious Facebook account portrays itself as a young-looking
> female named Hannah. [Defendant] inquired what the fictitious
> Facebook account's age was[,] to which Detective Rafferty replied,
> 13. [Defendant] requested the conversation continue via text

messaging as opposed to on Facebook Messenger and provided his phone number.

The conversation continued over text message. [Defendant] asked Hannah if she ha[d] lost her virginity and if she would ever want to hang out and cuddle. [Defendant] spoke to Hannah about snorting cocaine and asked if Hannah, the fictitious 13-year-old girl, would sell some for him. Hannah asked [defendant] what he wanted to do when they hang out, and [defendant] said he wouldn't say no to sex. [Defendant] stated he wanted a girl to chill with and his penis would come with it. Conversation continued from January 10th up to January 24th. Sex was discussed multiple times throughout this time span. [Defendant] sent a photo of his penis with a sex toy on it. [Defendant] advised it was 4.5 inches and he will go easy with it. [Defendant] stated he'll make her feel good and not make it hurt. He advised he would wear a condom.

On January 24th, [defendant] stated he was coming to her residence in Forrest[, Illinois,] and was going to be driving a blue Ford. [Defendant] stated he would be there at 4:39 p.m. and said that he would bring condoms.

At exactly 4:39 p.m., a blue Ford arrived at the prearranged location and [defendant] was taken into custody and searched. [Defendant] had condoms on his person, and [defendant's] phone

was plugged into the vehicle with directions to the prearranged location."

The circuit found "probable cause an offense has occurred." Turning to the detention issue, the court again confirmed defense counsel had a chance to confer with defendant on the petition to detain. The State informed the court it would be relying upon the probable cause statement and the pretrial investigation report as its proffer.

¶ 7         The defense submitted an affidavit from defendant's mother, Twila Johnson, wherein she averred defendant lives with her, and if he were granted pretrial release, she would "assure he does not have access to [her] computer, computer passwords, or any internet passwords when in [her] home." She further affirmed she would ensure defendant followed all conditions of release and she would "transport him to treatment, counseling, evaluations, meeting with court services, and further court appearances." Johnson stated she would "arrange for [inpatient] treatment for substance abuse," noting he "previously completed inpatient substance abuse treatment recently." Defense counsel argued defendant would comply with "any and all pretrial conditions, including no contact with a minor, any minor, no Internet usage, deleting social history or social media accounts, also, and submit to GPS monitoring and any other conditions the Court feels appropriate." Defendant would also submit to drug testing. Counsel argued the Facebook account in question used images of adult women and had already led to multiple prosecutions.

¶ 8         During the parties' arguments to the circuit court, the State emphasized defendant sought out a person he believed to be a 13-year-old girl for sex and to have her sell cocaine for him. The State maintained, "regarding dangerousness *** it's very clear that this, that there is clear and convincing evidence that defendant is a danger to the community as a whole." As for

possible conditions to mitigate dangerousness, the State noted "the defendant has already used tactics to try to cover his tracks, specifically, requesting that they only communicate over text as opposed to over the potentially more trackable Facebook Messenger." The State noted defendant had been on probation for possession of a controlled substance since April 2023 and he "didn't even manage a year on probation without picking up a major felony." The State reasoned the court could not impose any other conditions of pretrial release that probation did not already impose. The State argued that "effective monitoring of electronic communications is effectively impossible" because "[t]he Internet is everywhere." It acknowledged, "Pretrial Services can really, at most, demand a defendant's phone be turned over; but actual effective monitoring of Internet use would pretty much require an officer over the defendant's shoulder 24/7." The State further argued GPS monitoring would not be effective because it cannot tell "what he's doing or who he's speaking with. So, even confining him to his house wouldn't work." The State maintained "defendant's promises to comply with any condition of release *** don't really have any real value" because he "was already on second-chance probation at the time of this offense; and, again, less than a year in, he is soliciting minors for sex and trying to recruit them to assist him in the sale of cocaine." Ultimately, the State argued it proved clearly and convincingly the proof was evident defendant committed a detainable offense, he posed a real and present threat the community, and no set of conditions could mitigate that threat or ensure his compliance with court orders.

¶ 9 Defense counsel conceded the State established probable cause, but he argued the State did not sufficiently prove defendant posed a danger to the community or that pretrial conditions could not alleviate any risk he posed to society. Counsel disagreed with the State's argument that electronic monitoring would be impossible, noting, "We monitor, or we order

- 5 -

monitoring of clients all the time." Counsel again noted defendant would agree to delete social media accounts and emphasized defendant's mother would help him comply with pretrial release conditions. Counsel related defendant's alleged crime here to "a substance abuse issue." Defense counsel concluded, "I believe the pretrial conditions would be effective to alleviate the danger to the community," and he asked that defendant be released.

¶ 10 The circuit court asked Lemerand from the Office of Pretrial Services, "[I]s it a fair statement that you are not able to monitor these individuals 24/7?" Lemerand answered people cannot be monitored around the clock. She confirmed she can request a person's phone and any other electronic devices. When the court asked, "But how would you monitor if they got another device after giving you one?" Lemerand answered, "Unable to." Neither party asked Lemerand any questions.

¶ 11 In determining whether defendant should be granted pretrial release, the circuit court began with the "presumption that all defendants are entitled to pretrial release subject to certain universal conditions." After outlining what the State must establish to have defendant detained, the court explained, "I am required to conduct an individualized assessment of this particular defendant on whether to detain the defendant versus releasing him with conditions." The court referenced the factors it must consider from section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2022)), and, taking into account the nature and circumstances of the offense, along with the weight of the evidence against defendant, it found:

> "Obviously, this is a very serious offense. Any time you have
> somebody preying on minors, a very vulnerable portion of our
> community, that's concerning for the Court. It's a very serious
> offense; and the facts and circumstances as proffered by the State

in this particular case are quite alarming. The history, or excuse me, the weight of the evidence against the defendant, at this point, certainly understand it's a proffer and that the defendant is presumed innocent, but I do think there is an apparent strength to the State's case in this particular situation based on that same proffer."

As for defendant's history and characteristics, the court found "he was, he was on second-chance probation for a felony offense out of Iroquois County and was placed on that less than a year ago." Finally, the court found defendant's release posed a risk of obstructing the criminal justice system.

¶ 12    In giving its decision on the record, the circuit court explained it considered the applicable statutes, the parties' proffers, the probable cause statement, the pretrial detention reports, and Johnson's affidavit. It found first, "I do believe that the proof is evident or the presumption is great that the defendant has committed a qualifying offense for which the defendant would be statutor[il]y eligible for detention under the dangerousness standard." The court went on to find, "I don't believe that there are any, I don't think that there's any conditions for that matter that would allow or mitigate that threat. I do believe that the defendant poses a real and significant danger to the community." The court referenced how defendant preyed upon what he believed to be a 13-year-old girl, "asking if she's a virgin and telling her that things wouldn't hurt and things of that nature." As for imposing conditions of pretrial release, the court next found: "I also think that the defendant is unlikely to comply with some or all pretrial release conditions that could be imposed in this particular case." The court referenced how Lemerand

"indicated that there's really ultimately no way that they can monitor this defendant 24/7." It further explained:

> "I understand that we can take his cell phone, I understand that we can take everything in the household; but we've already seen, or I've already seen, based on the probable cause statement, this defendant already trying to hide by changing his mode of communication, first by Internet and then by text message, and it's simply just not realistic. Again, many of the arguments that the State makes, this Court will adopt as at least the rationale; they're good arguments. And the fact that putting on electronic home monitoring, again, does not tell me what he's doing, just tells me he's at home, I certainly understand that; but, again, it's not telling me whether he's on the Internet or not and that the Office of Pretrial Services is unable to monitor this gentlemen [*sic*] 24/7, which is required when you're dealing with somebody who's working in the virtual world, not in the actual world, but in the virtual world.
>
> I don't believe that there's a combination of available pretrial release conditions that would adequately mitigate the high risk of having this individual, the defendant, in the community; and I don't believe that there are any less restrictive conditions available, I think they would be ineffective. I don't believe that the community safety can meaningfully be achieved with the available

conditions of pretrial release in this case. I think that there's a high likelihood that the defendant would commit a new criminal offense if granted pretrial release. He's already on probation for one offense; and less than year after pleading guilty and being placed on that, he's committed another offense. And he has a history of disobeying court orders, specifically, violating the terms of his probation to not commit a crime of any other jurisdiction or any other state for that matter."

With that, the court ordered defendant detained.

¶ 13         The circuit court then entered a written order summarizing its reasons for denying pretrial release and expressly finding the State made all requisite showings by clear and convincing evidence. The court found "less restrictive conditions would not avoid a real and present threat to the safety of *** the community" because the restrictions were inadequate, there was a high likelihood that defendant would commit a new criminal offense if released, and defendant had a history of disobeying court orders.

¶ 14         On February 8, 2024, defendant filed his notice of appeal under Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023).

¶ 15                                        II. ANALYSIS

¶ 16         Defendant's notice of appeal is a completed form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023)), by which defendant requests pretrial release with conditions. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail."

Defendant checked one ground for relief and wrote sentences on the preprinted lines to support the claim.

¶ 17     The ground for relief defendant checked alleged the following: "The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." He then argued:

> "The Defendant proffered that he would abibe [*sic*] by any pretrial conditions the Court felt appropriate, including deleting social media accounts, no access to the internet, GPS monitoring and reporting to Pretrial Services who could then inspect his phone or other internet connected devices. The Defendant's mother presented her affidavit in[ ]which she stated she would arrange for in patient [*sic*] treatment for substance abuse. The Defendant scored a 7 out of 14 on the [VPRAI-R] assessment tool. Further the Defendant has only one prior felony conviction in another county."

¶ 18     The Office of the State Appellate Defender (OSAD), defendant's appointed counsel on appeal, filed a Rule 604(h) memorandum expounding upon the above reason for reversing the circuit court's detention order. OSAD's memo acknowledges defendant checked the box on the form notice of appeal indicating he challenged the dangerousness finding, but the "argument refers to possible conditions of release." Consequently, the memo argues the court abused its discretion in "finding that the conditions of GPS location monitoring, a curfew, and forbidding contact with minors and the use of electronic communications would not mitigate any

threat that [defendant] posed to the community." This alone is the argument we will consider here.

¶ 19　　Before denying pretrial release, the State must prove by clear and convincing evidence (1) "the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a)," (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and (3) "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(1), (2), (3)(i) (West 2022). Section 110-5(a) of the Code guides courts in considering what, if any, conditions of pretrial release "will reasonably ensure the *** safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release" and provides several factors to consider. 725 ILCS 5/110-5(a) (West 2022).

¶ 20　　The determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. Likewise, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44, 123 N.E.3d 393.

¶ 21 Here, defendant has not shown the circuit court abused its discretion in finding that no condition or combination of conditions could mitigate the real and present threat defendant posed to the community, based on the specific and articulable facts of the case. As he did in the court below, he maintains there are conditions of pretrial release that could reduce the threat he posed to society. For example, he suggests "GPS location monitoring, forbidding him from using the internet, and surrendering any internet-capable devices currently in his possession" could "significantly further mitigate" the "limited risk to the community" he poses. He again emphasizes that his mother would ensure he complied with any pretrial release conditions and maintains "there is no particular reason to doubt her desire to keep her son from violating pretrial conditions or having sex with a child."

¶ 22 We observe, initially, defendant's arguments on appeal amount to asking this court to reweigh the proffers, but we cannot do that because "we are not reviewing the State's evidence anew." *Inman*, 2023 IL App (4th) 230864, ¶ 11. In making the same arguments here as he did below, defendant is asking us to view the proffers in light of the statutory factors and substitute our judgment for the circuit court's, which is not appropriate in these appeals. *Inman*, 2023 IL App (4th) 230864, ¶ 11; *Vega*, 2018 IL App (1st) 160619, ¶ 44. Likewise, in emphasizing his mother's commitment to helping him or reiterating his willingness to comply with restrictions, defendant is asking us to reweigh the circuit court's credibility determinations, which we will not do. *Vega*, 2018 IL App (1st) 160619, ¶ 44. The court apparently did not credit defendant's or Johnson's promises to comply with conditions. To now argue he should be released because *this time*, he and his mother say, he will comply, rings hollow and should be recognized for what it is. The circuit court ultimately rejected these same arguments from

- 12 -

defendant in the detention hearing, and we conclude it was not unreasonable, arbitrary, or fanciful for it to do so. *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 23 In compliance with section 110-5(a) of the Code (725 ILCS 5/110-5(a) (West 2022)), the circuit court considered several factors when determining which, if any, conditions of pretrial release would ensure the safety of the community. Looking at defendant's history and his risk of obstructing the system (725 ILCS 5/110-5(a)(3), (5) (West 2022)), the court found defendant's history of noncompliance cautioned against pretrial release. It noted defendant's "history of disobeying court orders," explaining, "[h]e's already on probation for one offense; and less than year after pleading guilty and being placed on that, he's committed another offense." Likewise, the court considered the nature and circumstances of the present offenses (725 ILCS 5/110-5(a)(1) (West 2022)), calling them "very serious" and "quite alarming," which, in turn, made the threat to the community serious (725 ILCS 5/110-5(a)(4) (West 2022)). The court noted defendant sought out a girl he believed to be 13 years old to have sex with and use to sell cocaine. The court found it important to note defendant preyed upon a vulnerable member of the community. It concluded the evidence against defendant was strong. See 725 ILCS 5/110-5(a)(2) (West 2022).

¶ 24 When concluding nothing less than pretrial detention could reduce the threat defendant poses to the community, the circuit court emphasized the inability to monitor defendant's Internet access or use. It referenced Lemerand's statements about what the Office of Pretrial Services could do to effectively monitor defendant. She stated she could take defendant's phone but could not prevent him from obtaining a new one. Furthermore, electronic monitoring would not reveal if defendant was using the Internet. The court found this information persuasive because defendant was "working in the virtual world" to commit real-world crimes. Ultimately,

the court opined "that there's a high likelihood that the defendant would commit a new criminal offense if granted pretrial release." It concluded, "I don't believe that there's a combination of available pretrial conditions that would adequately mitigate the high risk of having this individual, the defendant, in the community; and I don't believe that there are any less restrictive conditions available, I think they would be ineffective." We cannot say that this conclusion is arbitrary or fanciful or that no reasonable person would agree with the court that no condition or combination of conditions could lessen the threat defendant posed to the community. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. Consequently, we cannot conclude the court abused its discretion. *Simmons*, 2019 IL App (1st) 191253, ¶ 9; *Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30.

¶ 25    The record supports the circuit court's decision to deny defendant pretrial release. It gave the matter proper consideration and gave a thorough rationale for its decision. The record also confirms the court followed and applied the Code when deciding to detain defendant. Therefore, the decision was not arbitrary, fanciful, or unreasonable. There was no abuse of discretion. *Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 26                              III. CONCLUSION

¶ 27    For all these reasons, we affirm the circuit court's judgment.

¶ 28    Affirmed.